UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | |
| BYRON ROBINS ET AL. | NO.: 18-83-BAJ-EWD |

## RULING AND ORDER

Before the Court is Defendant Ricky Joseph's **Motion to Suppress (Doc. 201)** wiretap evidence. Joining in the motion are Defendants Byron Robins, Shanard Banks, Reuben Crawford, Chris Davis, Le'Alan Banks, Toddriquez Bradley, and Charlene Brock. (Docs. 255, 256, 257, 258, 259, 260, 261). For the reasons that follow, the **Motion (Doc. 201)** is **DENIED**.

I.  BACKGROUND

This drug-conspiracy case arises from the activities of the FreeBandz organization in Baton Rouge, Louisiana. (Doc. 1). A grand jury returned a 68-count indictment charging 21 FreeBandz associates with drug-related crimes. (*Id.*).

Three United States District Judges entered orders authorizing the use of wiretaps to investigate the FreeBandz organization. *See* Doc. 1-3 in Case No. 17-MC-40 (Brady, J.); Doc. 1-4 in Case No. 17-MC-64 (Jackson, J.); Doc. 1-6 in Case No. 17-MC-148 (deGravelles, J.).

1

Defendants move to suppress evidence derived from these wiretaps on the ground that the wiretap applications failed to satisfy 18 U.S.C. § 2518(3)(c). (Doc. 201).[1] That provision creates a necessity requirement: a wiretap applicant must show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

Defendants concede that the first wiretap application is dispositive: if it meets the necessity requirement, then the second and third do, too. (Doc. 201-1). So the Court recites only those facts relevant to the first application. *See* Doc. 1 in Case No. 17-MC-40.

The United States applied for the wiretap about six months after it began investigating the FreeBandz organization. *See* Doc. 1 in Case No. 17-MC-40. In its application, the United States stated that "normal investigative techniques have been tried and have failed, or reasonably appear unlikely to succeed if tried or are too dangerous to employ." Doc. 1 in Case No. 17-MC-40.

To support that assertion, the United States offered the 52-page affidavit of a Drug Enforcement Administration agent. *See* Doc. 1-2 in Case No. 17-MC-40. The affidavit describes the "normal investigative procedures" the United States tried or considered before applying for the wiretap. *Id.* Those procedures include: confidential sources, controlled purchases, physical surveillance, pole cameras, undercover agents, search warrants, vehicle tracking devices, subject interviews, grand jury

---

[1] Defendants concede that the applications do not contain any false statements. (Doc. 325).

subpoenas, trash searches, pen registers, police records, mail cover requests, and financial investigation. *Id.*

Discrediting the affidavit's assertions, Defendants argue that the United States cannot show necessity because "normal investigative procedures" yielded "significant evidence." (Doc. 201-1). The United States rejoins that its limited success using "normal investigative procedures" does not preclude it from applying for a wiretap. (Doc. 291).

## II. LEGAL STANDARD

Defendants bear the initial burden of showing that the United States illegally obtained the wiretap. *See United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). If Defendants meet that burden, then the burden shifts to the United States to "prove that the evidence in question was obtained from another source and is not tainted by the illegal surveillance." *Id.*

## III. DISCUSSION

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs the interception of wire communications. *See* 18 U.S.C. §§ 2510 to 2520. It has twin purposes: "'(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception for wire and oral communications may be authorized.'" *Gelbard v. United States*, 408 U.S. 41, 48 (1972) (quoting S. REP. NO. 90-1097, at 66 (1968)).

Title III prohibits wiretap authorization unless the facts in the application show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). This necessity requirement aims to ensure that the United States does not resort to a wiretap when traditional investigative techniques will do. *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984). It does not, however, require the United States to explore "every other imaginable method of investigation" before applying for a wiretap. *Id.* at 1055.

Taking a "common sense view" of the statements contained in the wiretap application and the 52-page affidavit, the Court finds that the application satisfies the necessity requirement. *United States v. Guerra-Marez*, 928 F.2d 665, 670 (5th Cir. 1991). The application affidavit shows that (1) the United States could not fully develop its case against FreeBandz's management with the knowledge of one low-level confidential informant; (2) four controlled purchases failed to reveal the structure of the FreeBandz organization and further purchases would probably not do so; (3) pole cameras and physical surveillance were of limited value; (4) the FreeBandz organization is so closely-knit that an undercover agent would probably not be able to infiltrate it; and (5) other investigative actions, such as trash searches, mobile tracking devices, and the use of the federal grand jury, would probably not succeed. *See* Doc. 1-2 in Case No. 17-MC-40.

Granted, the United States enjoyed limited success using a confidential informant, pole cameras, and physical surveillance. *See id.* But those techniques

4

failed to reveal the scope of the FreeBandz organization; as Defendants concede, traditional techniques revealed only eight of the twenty-one Defendants. (Doc. 201-1 at p. 7).

Beyond that concession, the United States Court of Appeals for the Fifth Circuit has "repeatedly upheld the issuance of wiretap authorization" when—as here—the United States seeks "to expand its investigation into the full scope of a criminal enterprise, and traditional investigative techniques, through productive of some evidence, could not reveal that scope." *United States v. Butler*, 477 F. App'x 217, 220 (5th Cir. 2012) (per curiam).[2]

Because the United States' wiretap application satisfied the necessity requirement, as well as the other requirements of 18 U.S.C. § 2518(3), the Court properly authorized the wiretap.

---

[2] *See also United States v. Kelley*, 140 F.3d 596, 604–606 (5th Cir. 1998) (upholding denial of motion to suppress wiretap evidence when investigation revealed the identity of participants in a drug conspiracy but not the "source and volume of the trade"); *United States v. Krout*, 66 F.3d 1420, 1424–1425 (5th Cir. 1995) (upholding denial of motion to suppress wiretap evidence when application affidavit asserted that informants could not infiltrate the conspiracy at a sufficiently high level to obtain significant evidence).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 201)** is **DENIED**.

Baton Rouge, Louisiana, this 29th day of April, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**